IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA          )
                                  )
v.                                )   Case No. 3:10CR170-9–HEH
                                  )
HAROLD HERNDON,                   )
                                  )
     Defendant.                   )

## MEMORANDUM OPINION
(Defendant's Motion to Strike Paragraphs in the Indictment Related
to Illegal Gambling as Funding; Motion in Limine; and Motion
for Exculpatory and Impeachment Evidence)

The Defendant, Harold Herndon, was indicted on June 10, 2010, for Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d) (Count 1) and Conspiracy to Commit Violence in Aid of Racketeering, 18 U.S.C. § 1959(a)(6) (Count 2).  The matter is presently before the Court on three pretrial motions: 1) Motion to Strike Paragraphs in the Indictment Related to Illegal Gambling as Funding; 2) Motion in Limine; and 3) Motion for Exculpatory and Impeachment Evidence.  The Defendant has filed memoranda of law supporting his position on each of these motions. With respect to those motions addressed in this Memorandum Opinion, the Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid in the decisional process.

In his Motion for Exculpatory and Impeachment Evidence, the Defendant adopts the arguments and authority cited by Defendants Jack Rosga and Mark Jason Fiel.  In

addition, the Defendant also requests any evidence, information, notes, or recordings of meetings where he was asked to step down as Vice President of the Copper Region, including dates, reasons, and circumstances surrounding the requests.

The motions for exculpatory and impeachment evidence filed by Defendants Rosga and Fiel are expansive in scope and seek broad categories of information and documents which could potentially be exculpatory. Motions seeking exculpatory, impeachment, and mitigating evidence are self-executing. The Defendant's Motion puts the government on notice that certain materials and information that may be in their possession could be exculpatory and should be examined carefully. The Defendant's request is sufficient to draw the government's attention specifically to the materials requested. *United States v. Billups*, 692 F.2d 320, 325–26 (4th Cir. 1982). At this stage, the government shoulders the burden of determining whether or not such information is disclosable under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963). If, on careful review, the government determines that the information requested is material and favorable to the Defendant, it has a duty to disclose it in a timely manner.

In enforcing the disclosure requirements mandated by *Brady*, courts have divided exculpatory evidence into two categories—that demonstrating actual innocence and that which affects the weight, value, and credibility of the prosecution evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985); *United States v. Beckford*, 962 F. Supp. 780, 788 (E.D. Va. 1997). The former should be disclosed

2

promptly; the latter in time to be of use at trial, but not later than ten days before trial.

Turning next to the Defendant's Motion in Limine to Preclude Admission of Co-conspirator Hearsay Statements, the Defendant urges the Court to review any out-of-court statements of co-conspirators that the government intends to offer as evidence at trial before they are admitted. In order to minimize the prejudicial impact of such statements, the Defendant suggests that the Court make a determination as to their admissibility before the statements are presented in trial to the jury. In support of this Motion, the Defendant relies on *United States v. Gantt*, 617 F.2d 831, 845 (D.C. Cir. 1980).[1]

Judicial screening of co-conspirators' statements before being admitted into evidence during the government's case-in-chief appears to have its genesis in the Fifth Circuit decision in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S. Ct. 2836 (1979). The Fourth Circuit has, however, rejected this formalistic requirement of a preliminary hearing to determine the existence of a conspiracy before statements can be admitted under Federal Rule of Evidence 801(d)(2)(E). *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983). As the Fourth Circuit pointed out in *United States v. Blevins*, "[i]nstead, we allow a trial court to conditionally admit co-conspirators' statements subject to the subsequent satisfaction of

---

[1] The Defendant's reliance on *Gantt* appears to be misplaced. The D.C. Circuit did not adopt the rigid rule announced in the earlier panel decision in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S. Ct. 2836 (1979). In *Gantt*, the Court embraced the widely accepted policy of vesting the trial court with discretion to conditionally admit declaration of co-conspirators "subject to connection." *Gantt*, 617 F.2d at 845.

the requirements for their admission." *United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992) (citing *Hines*, 717 F.2d at 1488). Moreover, we do not believe that a trial judge is required to set out on the record his reasons for making this evidentiary ruling . . . ." *Id.*

This Court will follow the teachings of *Blevins* and allow co-conspirators' statements to be conditionally admitted subject to subsequent proof by the government that they were made "during the course of and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

Lastly, the Defendant moves to strike paragraphs in the Indictment "related to [illegal] gambling as funding." (Def.'s Mot. Strike 2.) The Defendant focuses specifically on paragraphs 68 and 69 of Count 1. In Count 1, the Defendant is charged with Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d). Paragraphs 68 and 69 are delineated as overt acts in furtherance of the racketeering conspiracy. Paragraph 68 alleges that the members of the North Carolina Chapter of the Outlaws "discussed the use of illegal gambling machines inside their clubhouse, and that the proceeds are used to pay chapter dues and to cover all clubhouse bills." (Indictment ¶ 68.) In paragraph 69, it alleges that the Defendant, as the Outlaws Copper Region Vice President,

> told undercover Outlaw members that the Lexington Chapter had made approximately $24,000 profit from the use of illegal gambling machines since April 2009 . . . [and that] other members agreed to facilitate the delivery of additional illegal gambling machines to the undercover

4

clubhouse. They also discussed that the chapter must make a 60%-40% split of the gambling proceeds with the person who owns the machines. (Indictment ¶ 69.)

It is important to note that in the methods and means section of the conspiracy count, it specifics in paragraph 17(a) that the cost of underwriting the operation of the illegal enterprise was funded in part by gambling. Moreover, it is alleged in paragraph 18(C) that one of the objects of the racketeering conspiracy was illegal gambling, in violation of 18 U.S.C. § 1955.

The Defendant argues that gambling cannot be considered "a component of this alleged RICO conspiracy" because there is no evidence of gambling at any other Outlaws club aside from the single incident mentioned in the Indictment. Furthermore, the Defendant contends that the gambling activities mentioned in the Indictment were instigated by the Bureau of Alcohol, Tobacco, and Firearms, who allegedly encouraged some members of the Outlaws North Carolina Chapter to deliver gambling devices to the Petersburg, Virginia clubhouse. (Def.'s Mot. Strike 1.)

The Racketeer Influenced and Corrupt Organizations Act clearly contemplates gambling as a racketeering activity. *See* 18 U.S.C. § 1961(1)(A) (defining racketeering activity). The Act also specifically prohibits use of income derived from a pattern of racketeering activity to underwrite the operation of a racketeering enterprise. *See* 18 U.S.C. § 1962(a). If the government's evidence is able to establish that the Defendant was a member of the racketeering enterprise, he has potential criminal liability for the

5

club's illegal gambling activities. *See Pinkerton v. United States*, 328 U.S. 640, 645, 66 S. Ct. 1180, 1183 (1946); *United States v. Singh*, 518 F.3d 236, 253–54 (4th Cir. 2008). This, of course, is an issue for the trier of fact. Count 1 appears to be valid on its face and this Court lacks authority at this stage to review the sufficiency of the evidence supporting the Indictment. *See United States v. Wills*, 346 F.3d 476, 488–89 (4th Cir. 2003).

The Defendant's Motion to Strike Paragraphs in the Indictment Related to Illegal Gambling as Funding will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Dated: Aug 19 2010
Richmond, Virginia